

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD82489 |
| | ) | |
| STEVEN M. BURKHALTER, | ) | FILED: August 31, 2021 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable Charles H. McKenzie, Judge**

**Before Division One: Lisa White Hardwick, P.J., and**
**Alok Ahuja and Anthony Rex Gabbert, JJ.**

Following a bench trial, the Circuit Court of Jackson County found Steven Burkhalter guilty of first-degree sodomy and first-degree rape. The court sentenced him to a total term of fifteen years' imprisonment. Burkhalter appeals. He argues that the circuit court erred when it convicted him of first-degree sodomy without considering first-degree sexual abuse as a lesser-included offense. Because the same facts would have established first-degree sexual abuse and first-degree sodomy, the circuit court did not err in refusing Burkhalter's request to consider first-degree sexual abuse as a lesser-included offense. We accordingly affirm Burkhalter's conviction.

## Factual Background

The Victim in this case is a thirty-five-year-old female. On the evening of August 1, 2015, Burkhalter, who is the Victim's cousin, contacted her to ask if he could stay at her apartment that night. The Victim agreed. The Victim had recently been involved in a car accident. At approximately 8:00 p.m., she took the

pain medications that she had been prescribed, along with a glass of wine, and went to bed, where she fell asleep. The Victim left the front door unlocked because she expected Burkhalter and/or her boyfriend to arrive later that night.

At some point during the night the Victim felt something "touching on [her] leg," and perceived that somebody was "moving [her] over into different positions." The Victim assumed that her boyfriend had gotten into bed with her. Because of the effect of the medications she had taken, the Victim was unable to open her eyes or to fully wake up. The Victim testified she felt "touching" on her "[r]ectum and vagina." While she did not "feel anything being inserted into either of those places," the Victim did remember feeling someone performing oral sex on her.

The Victim testified at trial that she woke up on the morning of August 2, 2015, at approximately 5:00 or 6:00 a.m. When she awoke the Victim found Burkhalter "right in the middle of my legs" with his head between her legs. She testified that she moved Burkhalter off of her and ran into the bathroom. The Victim testified that she had pain or soreness in her rectum, semen on her stomach and vagina, and feces on her body as well. Victim showered and washed herself with soap and water, including her vagina and rectum.

The Victim called 9-1-1 and later went to the hospital where a sexual assault examination was performed. During the examination Victim reported penis-to-vagina contact. She told hospital personnel that it "felt like" penile contact with her vagina or anus had occurred, but that she was not certain if anal penetration had occurred. The Victim also reported abdominal, vaginal, and rectal pain. The sexual assault examination did not reveal any vaginal, cervical, or anal injuries or bruising. The nurse performing the examination collected rectal and vaginal swabs and smears. The rectal and vaginal smears both tested negative for semen. Burkhalter was identified only as a possible minor contributor of DNA collected

2

from the vaginal swabs; but the allele that was identified is "very common," and is present in approximately 54% of the population.

As part of their investigation, police recovered the nightgown that Victim had been wearing on the night of August 1-2. Forensic analysis revealed a stain on the interior backside of the nightgown that tested positive for semen. Burkhalter was identified through DNA analysis as the source of the semen stain, with the Victim's DNA identified as an equal contributor to the stain.

Burkhalter was originally indicted on January 20, 2017. On October 29, 2018, the State filed an information in lieu of indictment which charged him with first-degree sodomy and first-degree rape. The information alleged that Burkhalter committed the offense of first-degree rape by engaging in sexual intercourse with the Victim at a time when she was incapable of consenting. As to the sodomy charge, the information alleged that Burkhalter "knowingly had deviate sexual intercourse with [the Victim], a person who was incapable of consent." The charging instrument did not identify any specific act or method by which Burkhalter allegedly committed deviate sexual intercourse. The information alleged that Burkhalter was a prior and persistent offender subject to enhanced punishment based on four prior felony convictions for burglary, and one prior felony drug conviction.

Burkhalter waived his right to a jury trial, and the case was tried to the court in October 2019.

At the conclusion of the evidence, the parties discussed whether the court should consider a number of lesser-included offenses. The prosecutor explained that the State's contention on the sodomy charge was that Burkhalter had engaged in deviate sexual intercourse with the victim by "placing his penis in the anus of the victim." Defense counsel asked the circuit court to consider first- and second-degree sexual abuse as lesser-included offenses of the first-degree sodomy charge. The

3

court denied the request, and explained that, "as a matter of law, I will not consider those [offenses] in my analysis and determination as to . . . whether or not the defendant is guilty or not guilty of any of the offenses."

The circuit court found Burkhalter guilty of both first-degree sodomy and first-degree rape (as charged), and also found him to be a prior and persistent offender. On January 14, 2019, the court sentenced Burkhalter to a total term of fifteen years' imprisonment: eight years for sodomy and seven years for rape, with the sentences to be served consecutively.

Burkhalter appeals.

## Standard of Review

When a criminal case is tried to a jury, we review *de novo* whether the circuit court correctly refused to give a lesser-included-offense instruction requested by the defendant. *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. 2014). Although this case was tried to the court, the court as fact-finder refused to consider possibly convicting Burkhalter of first-degree sexual abuse, based on the court's legal conclusion that first-degree sexual abuse did not constitute a lesser-included offense of first-degree sodomy. The parties agree that we should review Burkhalter's challenge to this legal conclusion using the same *de novo* standard applicable in a jury-tried case.

## Discussion

On appeal, Burkhalter argues that the circuit court erred in refusing to consider first-degree sexual abuse as a lesser-included offense to the charge of first-degree sodomy, as requested by defense counsel.

Section 556.046[1] governs when an offense is "included" in another, and also when the trial court must instruct a jury with respect to an included offense. As

---

[1]     Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2014 Cumulative Supplement.

4

relevant here, § 556.046.1(1) provides that a given offense is "included" in a charged offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." A defendant is not entitled to an instruction on *all* "included" offenses, however. Instead, § 556.046.2 specifies that "[t]he court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the person of the offense charged and convicting him of the included offense." In sum, the circuit court *must* instruct a jury on an "included" offense when:

> (1) "a party timely requests the instruction," (2) "there is a basis in the evidence for acquitting the defendant of the charged offense," and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested."

*State v. Brown*, 524 S.W.3d 44, 47 (Mo. 2017) (quoting *State v. Jackson*, 433 S.W.3d 390, 396 (Mo. 2014)).

Every "included" offense is not a *lesser*-included offense on which the circuit court is required to instruct the jury if requested. Under § 556.046.1(1), an "included" offense includes an offense that "is established by proof of *the same . . . facts* required to establish the commission of the offense charged." (Emphasis added.) A defendant is not entitled to a lesser-included-offense instruction where *the same facts* would establish the commission of both the charged offense and the "included" offense, because where the same facts establish both offenses, "there could be no basis in fact for the jury to acquit the defendant of [the charged offense] and convict him of [the included offense]." *State v. Moseley*, 735 S.W.2d 46, 49 (Mo. App. W.D. 1987). Instead, where *the same facts* would establish the commission of two different statutory offenses, it is for the prosecutor – not a fact-finder – to choose the offense(s) for which the defendant will be prosecuted. "It is axiomatic that a single act may constitute an offense under two different statutes. It is then the responsibility of the prosecutor to elect under which statute to proceed." *Becker*

5

*v. State*, 260 S.W.3d 905, 912 (Mo. App. E.D. 2008) (quoting *State v. Kaiser*, 139 S.W.3d 545, 552 (Mo. App. E.D. 2004)). Where the same facts would be sufficient to establish the commission of two different offenses, the two offenses can be characterized as "parallel" or "alternative" offenses; one offense is not a "*lesser*-included offense" of the other.[2]

We recognize that § 556.046.2 addresses only the trial court's obligation to *instruct a jury* as to a lesser-included offense; the statute does not explicitly address the court's consideration of lesser-included offenses in a *bench-tried* case. The Missouri Supreme Court has held that, in a bench-tried case, the circuit court "ha[s] the inherent power to convict [a defendant] of [a] lesser-included . . . offense, even if neither party asked the court to do so." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. 2007) (citations omitted). In its Brief, the State asserts that, in a bench trial, "it would stand to reason that the trial court would . . . be expected to consider any requested lesser-included offenses" in the same circumstances in which jury instructions are required by § 556.046. In addition, in this case the circuit court explicitly stated that it would <u>not</u> consider first-degree sexual abuse as a lesser-included offense, based on its legal determination that first-degree sexual abuse did not constitute a lesser-included offense under § 556.046. In these circumstances, the correctness of the circuit court's judgment depends on whether the court correctly determined that first-degree sexual abuse was not a lesser-included offense within the meaning of § 556.046.

---

[2] An offense that "consist[s] of a <u>subset</u> of the greater offense's elements" is often referred to as a "nested" lesser-included offense. *State v. Vanlue*, 577 S.W.3d 834, 836 (Mo. App. S.D. 2019) (emphasis added; citation omitted); *accord State v. Randle*, 465 S.W.3d 477, 479 (Mo. 2015). A "nested lesser included offense is one that is separated from the greater offense by one differential element for which the State bears the burden of proof." *State v. Payne*, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016). Where an offense is deemed to be an "included" offense under § 556.046.1(1) because it is established by proof of *the same facts* as the charged offense, that "included" offense is <u>not</u> a "nested", <u>lesser</u>-included offense.

6

The information in lieu of indictment charged Burkhalter with first-degree sodomy, in addition to charging him with first-degree rape (for engaging in sexual intercourse with the Victim when she was incapable of consenting).  At the time of the offenses, § 566.060.1 defined first-degree sodomy as occurring when a person "has *deviate sexual intercourse* with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.060.1 (emphasis added).  "Deviate sexual intercourse" was defined to mean:

> [1] any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or [2] a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

§ 566.010(1).  The first clause of the definition of "deviate sexual intercourse" defined acts which constitute "contact sodomy," while the second clause defined acts constituting "penetration sodomy."  *Soto v. State*, 226 S.W.3d 164, 166 (Mo. 2007); *Becker v. State*, 260 S.W.3d 905, 911 (Mo. App. E.D. 2008).

At the relevant time, § 566.100.1 provided that "[a] person commits the offense of sexual abuse in the first degree if he or she subjects another person to *sexual contact* when that person is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion."  (Emphasis added.) "Sexual contact" was defined to include "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."  § 566.010(3).

At the time of Burkhalter's offenses, § 566.060.2 provided that first-degree sodomy was subject to an "authorized term of imprisonment [of] life imprisonment or a term of years not less than five years."  By contrast, first-degree sexual abuse

7

was classified as a class C felony, § 566.100.2, for which the authorized term of imprisonment was "a term of years not to exceed seven years." § 558.011.1(3).

In general, in determining whether one crime is a lesser-included offense of another crime, "we focus on the statutory elements of the offenses rather than the evidence offered at trial." *State v. Wright*, 608 S.W.3d 790, 795 (Mo. App. E.D. 2020) (citation omitted); *accord State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. 2002) ("The elements of the two offenses must be compared in theory, without regard to the specific conduct alleged." (citing *State v. Burns*, 877 S.W.2d 111, 112 (Mo. 1994))). But "when the statute defining the greater offense allows for alternative methods of commission, . . . the court must consider the manner in which the greater offense is charged." *Becker*, 260 S.W.3d at 909. As the Eastern District explained in *Becker*:

> If the statute criminalizing the greater offense allows only a single method of commission and the statute criminalizing the purported lesser offense likewise identifies only a single method of commission, the determination of whether a lesser offense is included in the greater offense can be completed by comparing the elements as set forth in the two statutes. . . . The statutory elements can be fully determined from the statutes themselves because the statutes allow no alternative methods of commission.
>
> However, the analysis of statutory elements will require reference to the charging instrument whenever the greater offense allows for alternative methods of commission. . . . With offenses such as first-degree sodomy, where the statute identifies some ten different actions that constitute the offense, we must consider the manner in which the greater offense is actually charged.

*Id.* (footnotes omitted); *see also, e.g., State v. Kamaka*, 277 S.W.3d 807, 813-14 (Mo. App. W.D. 2009) (looking to the specific method by which the State charged the defendant with dissemination of child pornography, to determine whether possession of child pornography was a lesser-included offense).

Of significance here, *Becker* also observed that, in the "exceptional case," "[i]f the State's charging instrument itself allows for alternative methods of commission,

8

but the State elects to submit the offense to the jury on merely some of the alternative methods of commission, the statutory elements of the greater offense could not be determined until the election occurred." 260 S.W.3d at 909 n.2; *see also*, *e.g.*, *State v. Barnard*, 972 S.W.2d 462, 465 (Mo. App. W.D. 1998) (relying on verdict director to determine whether second-degree child molestation was a lesser-included offense of first-degree statutory sodomy, "[s]ince there are several kinds of conduct that can constitute" the "deviate sexual intercourse" which was charged generally in the information).

In this case, the State's information charged Burkhalter with the offense of first-degree sodomy by alleging that on August 2 he "knowingly had deviate sexual intercourse with [Victim]." The information did not specify any particular method by which Burkhalter engaged in deviate sexual intercourse with the Victim. At trial, however, the prosecutor argued in opening statement and closing argument that Burkhalter engaged in deviate sexual intercourse with the Victim by placing his penis in her anus.

Because the prosecution argued that Burkhalter was guilty of first-degree sodomy for engaging in nonconsensual anal intercourse with the Victim, Burkhalter argues that he was charged with "penetration sodomy." He then contends that, unlike the anal penetration required to establish "penetration sodomy," the "sexual contact" required to establish first-degree sexual abuse merely required that he *touch* the Victim's anus. Thus, Burkhalter argues that the manner in which the State prosecuted him for first-degree sodomy required proof of penetration, while first-degree sexual abuse merely required proof of touching. He accordingly contends that first-degree sexual abuse was a nested lesser-included offense, which the circuit court was required to consider before convicting him of first-degree sodomy.

9

We reject Burkhalter's contention that anal penetration was an essential element of the charge of first-degree sodomy, and therefore that first-degree sexual abuse was a *lesser*-included offense because it merely required *touching* of the Victim's anus. Under the first clause of § 566.010(1), "deviate sexual intercourse" was defined to include "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person" – what we have labeled "contact sodomy." The allegation that Burkhalter inserted his penis into the Victim's anus satisfied the definition of "contact sodomy" – since it would be an act involving his genitals and the Victim's anus. The second clause defining "penetration sodomy" was added to § 566.010(1) in 1994. *See* S.B. 693, 94th Gen. Assembly, 2d Reg. Sess. (1994) (effective January 1, 1995). Prior to the addition of "penetration sodomy" to the definition of "deviate sexual intercourse," Missouri courts repeatedly held that penetration of a victim's anus by the defendant's penis constituted "contact sodomy" under the first clause of the current definition. *See, e.g., State v. Rogers*, 942 S.W.2d 393, 396 (Mo. App. S.D. 1997); *State v. Euer*, 910 S.W.2d 352, 354-55 (Mo. App. S.D. 1995); *State v. White*, 873 S.W.2d 874, 878 (Mo. App. E.D. 1994). Even after the 1994 amendment, the Missouri Supreme Court has held that evidence "that Defendant penetrated the victim's anus with Defendant's penis . . . meets the definition of deviate sexual intercourse because it is an act involving Defendant's genitals and the anus of another person, the victim." *State v. Chambers*, 481 S.W.3d 1, 8 (Mo. 2016). Thus, Burkhalter's conduct fell within the definition of "contact sodomy," without reference to the statutory definition of "penetration sodomy," and without regard to whether or not he actually penetrated the Victim's anus with his penis.

Although not stated explicitly, Burkhalter's argument depends on the proposition that, by specifically alleging *penetration* of the Victim's anus, the State necessarily sought to prosecute Burkhalter's conduct as "penetration sodomy."

10

Burkhalter's actions did not constitute "penetration sodomy," however. Under the second clause of the definition of "deviate sexual intercourse" in § 566.010(1), what we have called "penetration sodomy" is defined in relevant part as "a sexual act involving the penetration, however slight, of . . . the anus by a finger, instrument or object." This definition of "penetration sodomy" is inapplicable here. As explained above, at the time of the 1994 amendments to § 566.010(1), courts had held in multiple cases that penile penetration of a victim's anus was <u>already</u> included in the definition of "deviate sexual intercourse," because it constitutes an "act involving the genitals of one person and the . . . anus of another person." The 1994 statutory amendment was not needed to bring penile penetration of the anus within the definition of "deviate sexual intercourse."

> When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law. The legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. This Court should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act. To amend a statute and accomplish nothing from the amendment would be a meaningless act.

*Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015) (citations omitted).

It would have been a meaningless act for the 1994 General Assembly to add a definition of "penetration sodomy" which encompassed actions which *already* fell within the definition of "deviate sexual intercourse." Instead, the evident purpose of the 1994 amendment to § 566.010(1) was to *expand* the scope of "deviate sexual intercourse," by adding additional acts which did not otherwise fall within the existing definition of "contact sodomy."

The 1994 amendment added penetration of the genitals or anus "by a finger, instrument or object" to the definition of "deviate sexual intercourse." It was

11

necessary to include penetration by a "finger" in the definition for two reasons. First, the same 1994 amendment removed "hand" from the definition of "contact sodomy" (a deletion which the legislature reversed in 2000, *see* S.B. 602, 90th Gen. Assembly, 2d Reg. Session (2000)). Therefore, without including "finger" in the second clause, digital penetration of a victim's genitals or anus would no longer fall within the definition of "deviate sexual intercourse." Second, this Court had held that penetration of a victim's anus with a defendant's finger did not fall within the pre-existing definition of "contact sodomy," because such conduct was not "a sexual act involving his (defendant's) genitals and the 'mouth, tongue, hand or anus' of the victim (or vice versa)." *State v. Hooker*, 791 S.W.2d 934, 938 (Mo. App. S.D. 1990). Thus, the inclusion of "finger" in the definition of "penetration sodomy" did not overlap with any part of the definition of "contact sodomy."

We recognize that the definition of "penetration sodomy" also included penetration of the genitals or anus by an "instrument or object." The term "object" can be interpreted broadly to include any "discrete visible or tangible thing." WEBSTER'S THIRD NEW INT'L DICTIONARY 1555 (unabridged ed. 2002) – which would include a defendant's penis. But if "object" were interpreted this broadly, it would have made it unnecessary to specifically refer to penetration by a "finger" or "instrument" in the definition of "penetration sodomy," since those items would be comprehended in the term "object." "'[T]his Court will not interpret the statute in a way that renders some phrases mere surplusage.'" *Amber-Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 908 n.6 (Mo. 2015) (quoting *Farish v. Mo. Dep't of Corr.*, 416 S.W.3d 793, 796 (Mo. 2013)); *see also, e.g., Piercy v. Mo. State Hwy. Patrol*, 583 S.W.3d 132, 140 (Mo. App. W.D. 2019). Further, "[i]n determining the meaning of a word in a statute, the Court will not look to any one portion of the statute in isolation. Rather, it will look at the word's usage in the context of the entire statute to determine its plain meaning." *Kersting v. Replogle*, 492 S.W.3d

12

600, 602-03 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted). Consistent with these relevant canons of statutory construction, and looking at § 566.010(1) as a whole, we conclude that "instrument" should be interpreted to refer to a "utensil" or "implement," WEBSTER'S THIRD NEW INT'L DICTIONARY 1172 (unabridged ed. 2002), while "object" should be read to refer to other tangible things which are not themselves human body parts or instruments. Interpreted in this manner, the definition of "penetration sodomy" in § 566.010(1) encompassed actions which did not themselves fit within the pre-existing definition of "contact sodomy" in the statute.

The State's allegation that Burkhalter inserted his penis in the Victim's anus alleged that he had engaged in an act of "contact sodomy" – namely, an "act involving the genitals of one person and the . . . anus of another person." § 566.010(1). Establishing that Burkhalter *penetrated* the Victim's anus with his penis was unnecessary to establish his guilt for first-degree sodomy – any touching of the Victim's anus with his penis would suffice. Any argument by the prosecutor that Burkhalter had penetrated the Victim's anus with his penis "was immaterial and constituted mere surplusage which amounted to the assumption of an unnecessary burden by the State." *State v. Bullock*, 179 S.W.3d 413, 416 (Mo. App. S.D. 2005) (citation omitted). Because only *touching* of the Victim's anus by Burkhalter's penis was required to establish "deviate sexual intercourse," the very same act that would constitute "sexual contact," and which would render Burkhalter guilty of first-degree sexual abuse, would <u>also</u> render him guilty of the charged offense of first-degree sodomy. In these circumstances, first-degree sexual abuse was not a <u>lesser</u>-included offense the circuit court was required to consider.

The Missouri Supreme Court has held that a defendant is not entitled to consideration of sexual abuse as a lesser-included-offense of sodomy when the defendant is accused of committing an act of "contact sodomy," and the same

13

conduct would accordingly establish either sodomy or sexual abuse. In *State v. Fields*, 739 S.W.2d 700 (Mo. 1987), the defendant was charged with three counts of sodomy for touching the vaginas of two minor females with his hand. The defendant argued that he was entitled to a lesser-included-offense instruction for second-degree sexual abuse with respect to each charge of sodomy. *Id.* at 703. The Supreme Court rejected this argument where – as here – the same evidence would satisfy the elements of either charge:

> The evidence in this case that appellant touched the girls' vaginas would be sufficient to satisfy either sodomy or sexual abuse in the second degree. . . . If the appellant only touched the victim, then both sodomy and sexual abuse second degree prohibit the same conduct. Sexual abuse in the second degree is not a lesser included offense of sodomy.
>
> There is no question the legislature is at liberty to provide that the same conduct may constitute different offenses. If such is done, the prosecutor has the discretion to decide which offense is charged.

*Id.* at 704-05.

This Court reached the same result in *Becker*, 260 S.W.3d 905, where a defendant argued in a post-conviction relief proceeding that his trial counsel was ineffective for failing to request a lesser-included-offense instruction for first-degree child molestation (which required "sexual contact"), in his prosecution for first-degree statutory sodomy (which required "deviate sexual intercourse"). The Court emphasized that – as charged – the first-degree statutory sodomy offense did not require penetration, but merely that the defendant committed an act of "contact sodomy": "simply . . . touching the victim's genitals with a hand." *Id.* at 911. It then observed that this same act of touching would *also* constitute the "sexual contact" necessary to convict the defendant of first-degree statutory sodomy. In such circumstances, the Court concluded that the defendant was not entitled to a lesser-included-offense instruction:

[P]recisely because the two offenses are established by the same facts, . . . the movant cannot show that any basis existed for his acquittal of the greater offense of first-degree statutory sodomy and his conviction only of the lesser-included offense of first-degree child molestation.[3] The movant cannot cite any evidence that an essential element of first-degree statutory sodomy was lacking, which would serve as a basis for acquittal of the greater offense and conviction of the lesser. Therefore, the movant cannot demonstrate that he was entitled to a jury instruction for first-degree child molestation. And we will not deem trial counsel ineffective for failing to request a jury instruction to which a defendant is not entitled. . . .

Furthermore, the movant had no entitlement to prosecution only for the lesser crime of first-degree child molestation rather than the more serious crime of first-degree statutory sodomy. "It is axiomatic that a single act may constitute an offense under two different statutes. It is then the responsibility of the prosecutor to elect under which statute to proceed." Where the legislature provides that the same facts may constitute separate offenses, the prosecution has discretion to determine which charge to bring.

*Id.* at 912 (citations omitted); *see also State v. Tansil*, 754 S.W.2d 18, 20 (Mo. App. E.D. 1988) (defendant charged with sodomy was not entitled to a lesser-included-offense instruction on sexual assault, where "[u]nder the facts of this case the elements of both crimes are exactly the same, the main operative fact being the touching of the victim's genitals by the hand of defendant"; "Under those circumstances the crimes are the same and the prosecution has the choice of which crime to prosecute and no instruction down is required.").

As in the cases discussed above, the same facts would establish Burkhalter's guilt of both first-degree sodomy and first-degree sexual abuse. As the State argues in its Brief:

Essentially, if the fact-finder believed Defendant had placed his penis in Victim's anus, Defendant would be guilty of both offenses; if it did

---

[3]    As discussed above at footnote 2, we question whether an uncharged offense proven by *the same facts* as a charged offense should be referred to as a "*lesser*-included offense" (even though under § 556.046.1(1) it plainly constitutes an "included" offense). We believe the term "*lesser*-included offense" is better reserved for those offenses proven by *a subset* of the facts proving the charged offense.

15

not believe he had committed this conduct, he would be guilty of neither. There is nothing to differentiate these two offenses such that the fact-finder would be permitted to acquit Defendant of sodomy and convict him of sexual abuse.

In these circumstances, Burkhalter was not entitled to have the court consider convicting him of first-degree sexual abuse, as a lesser-included offense of first-degree sodomy; the choice of which offense to charge was for the prosecutor.[4]

## Conclusion

We affirm the judgment of the circuit court.

_____
Alok Ahuja, Judge

All concur.

---

[4] Because the circuit court found that the State had proven all of the elements of first-degree sodomy beyond a reasonable doubt, the State also argues that Burkhalter cannot establish that he was prejudiced by the court's refusal to consider conviction of first-degree sexual abuse. Given our disposition we need not address this issue.